**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JASON M. BELL, SR.,**

                Plaintiff,                5:12-cv-1527
                                                        (GLS)

           v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                Defendant.
_____

APPEARANCES:                            OF COUNSEL:

FOR THE PLAINTIFF:
Olinsky Law Group                KAREN S. SOUTHWICK, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     DAVID L. BROWN
United States Attorney            Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Jason M. Bell, Sr. challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Bell's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On December 31, 2007, Bell filed an application for DIB under the Social Security Act ("the Act"), alleging disability since May 22, 2006. (Tr.[1] at 82, 183-92.) After his application was denied, (*id.* at 101-05), Bell requested a hearing before an Administrative Law Judge (ALJ), which was held on June 18, 2010, (*id.* at 56-81). On July 1, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 84-97.)

Bell commenced the present action by filing his complaint on October

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

8, 2012 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 13, 14.)

### III. Contentions

Bell contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 13 at 13-21.) Specifically, Bell claims that the ALJ erred by: (1) making a residual functional capacity (RFC) determination that is unsupported by substantial evidence; (2) failing to properly develop the record; (3) making an improper credibility finding; and (4) determining at step five that there is other work he can perform. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 14 at 5-12.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 13 at 2-11; Dkt. No. 14 at 1.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

First, Bell contends that the ALJ's RFC finding is unsupported by substantial evidence. (Dkt. No. 13 at 13-15.) Specifically, Bell argues that the ALJ erred by affording significant weight to the opinion of examining physician Barry Katzman, and failing to provide a function-by-function analysis of Bell's limitations. (*Id.*) The court disagrees.

1. *Weighing Medical Opinions*

According to Bell, Dr. Katzman's opinion that Bell was capable of returning to sedentary work prior to his back surgery should have been afforded "little weight" because it was rendered on an issue reserved to the Commissioner. (*Id.* at 13.) Further, Bell argues that this opinion was outdated as it was rendered more than three years before the ALJ made

4

his determination, and, thus, did not consider Bell's subsequent back surgery and persistent low back pain.  (*Id.* at 13-14.)

A claimant's RFC "is the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  The ALJ will consider opinions from medical sources on this issue, although the final responsibility for deciding a claimant's RFC is reserved to the Commissioner.  *See* 20 C.F.R. 404.1527(d)(2).  An ALJ's RFC determination must be supported by substantial evidence[2] in the record.  *See* 42 U.S.C. 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, in May 2007, Dr. Katzman, an orthopedic surgeon, examined Bell and reviewed his medical records for worker's compensation purposes.  (Tr. at 305-07.)  Dr. Katzman opined that Bell could "return to sedentary work only."  (*Id.* at 307.)  In determining Bell's RFC, the ALJ

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotations omitted).

5

gave this opinion "significant weight," explaining that the evidence indicates that Bell had improved following his surgery and "[t]here is no clinical evidence to support finding that [his] condition has worsened following his surgery to the point that he would no longer be capable of performing at least sedentary work." (*Id.* at 92.)

Contrary to Bell's argument, the ALJ did not err in considering Dr. Katzman's opinion in determining Bell's RFC. *See* 20 C.F.R. 404.1527(d)(2). Further, although Dr. Katzman's opinion was given prior to Bell's May 2007 back surgery, the ALJ considered Bell's subsequent progress when evaluating Dr. Katzman's opinion. (Tr. at 92.) Indeed, the ALJ's conclusion, that there is no clinical evidence that Bell's condition has worsened following his surgery to the point that he could no longer perform sedentary work, is supported by Bell's physical examinations after his back surgery. (*Compare id.* at 305-07, *with id.* at 281-82, 313, 324, 330-31, 393, 473-74, 512-13, 516, 530-31, 535-36, 545.) Additionally, x-rays and an MRI of Bell's spine, taken after his surgery, were normal with good instrumentation placement. (*Id.* at 286-87, 289, 522, 544, 546.)

2. *Failure to Perform Function-By-Function Analysis*

Bell also contends that the ALJ failed to provide functional findings

6

relating to his RFC. (Dkt. No. 13 at 14-15); *see* 20 C.F.R. § 404.1545(b); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 436 (N.D.N.Y. 2008). In fact, the ALJ stated that Bell retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) "except he needs the ability to alternate position every [thirty] to [forty-five] minutes." (Tr. at 90.) The ALJ noted Bell's testimony that he stands for an average of three and one-half hours a day, and cannot sit or walk for prolonged periods. (*Id.* at 71, 74-76, 92.)

Upon review of the existing record, including Dr. Katzman's opinion and the treatment notes from Bell's doctors, the court concludes that the ALJ's RFC determination was reasonable and supported by substantial evidence. Although he continued to suffer back pain after his back surgery, Bell no longer experienced leg pain, and, while tests performed showed at times that he had limitations in his lumbar spine range of motion, he had full motor strength in his lower extremities, and was neurologically intact. (*Id.* at 280-83, 313, 330-31, 512-13, 516, 545.) Further, on several occasions, Bell reported that Oxycontin pain medication helped alleviate his symptoms. (*Id.* at 273, 481, 485.) The ALJ's ultimate determination took account of the fact that Bell experienced at least some pain, and his need to alternate between sitting and standing. (*Id.* at 90.)

7

Although the ALJ could have provided further clarification with respect to Bell's capabilities, as the ALJ's decision examined the relevant factors in reaching an RFC determination, and the ultimate determination was supported by substantial evidence, this shortcoming does not amount to legal error. (*Id.* at 90-92); see *Cichocki v. Astrue*, 729 F.3 172, 177-78 (2d Cir. 2013); *Irizarry v. Astrue*, No. 5:09-cv-1370, 2012 WL 177969, at *2 (N.D.N.Y. Jan. 23, 2012).

**B.** **Development of the Record**

Next, Bell argues that the ALJ erred when he failed to fully develop the record. ( Dkt. No. 13 at 15-16.) According to Bell, as his treating physicians failed to provide function-by-function evaluations of his capabilities, the ALJ should have either recontacted such treating sources, or ordered a consultative examination to obtain such an opinion. (*Id.*) The Commissioner counters, and the court agrees, that the ALJ properly developed the record. (Dkt. No. 14 at 7-8.)

While the ALJ has an affirmative obligation to develop the administrative record, his duty to do so is not without limit. *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). Indeed, if all of the evidence received is consistent and sufficient to

8

determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence. *See* 20 C.F.R. § 404.1520b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Moreover, the ALJ is afforded discretion in determining whether a consultative exam is warranted. *See* 20 C.F.R. § 404.1519a. As with development of the record generally, "the ALJ is to order a consultative exam only when [the relevant medical evidence of record] is not 'sufficient' to make a decision." *Firpo v. Chater*, 100 F.3d 943, 1996 WL 49258, at *2 (2d Cir. 1996).

Here, the ALJ had before him Bell's treatment records, objective medical evidence, including x-rays and MRIs, and Dr. Katzman's opinion that Bell could perform sedentary work prior to his back surgery. (*See generally* Tr. at 245-546.) Notably, the lack of a medical source statement from a treating physician, will not, by itself, necessarily render the record incomplete. *See* 20 C.F.R. § 404.1513(b)(6); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013). The court is satisfied that further development of the record was unnecessary as the ALJ had before him substantial

9

evidence that enabled him to render a decision. *See Firpo*, 1996 WL 49258, at *2.

C. **Credibility Determination**

Bell also argues that the ALJ failed to make a proper credibility finding. (Dkt. No. 13 at 16-20.) Specifically, Bell contends that the ALJ: (1) mischaracterized the evidence when he stated that Bell's condition improved after his surgery; (2) failed to consider the type and dosage of Bell's medications; (3) improperly compared the consistency of Bell's statements with the ALJ's own RFC finding; and (4) misstated Bell's activities of daily living. (*Id.*) Again, the court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the

weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ found that Bell's statements concerning the intensity, persistence and limiting effects of his symptoms were not fully credible. (Tr. at 91.) In making his determination, the ALJ relied on Bell's treatment records, activities of daily living, testimony regarding his functional abilities, and the opinion of Dr. Katzman. (*Id.* at 91-92.) Although the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. § 404.1529(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-

11

388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'" (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004))). Here, the ALJ explicitly acknowledged consideration of the 20 C.F.R. § 404.1529 factors, (Tr. at 90), and it is evident from his thorough discussion that his credibility determination was legally sound. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). Further, it is clear from the ALJ's detailed credibility analysis that his reference to consistency with the RFC determination was merely an indication that the RFC determination incorporated those findings. (Tr. at 91.)

    Bell points to his complaints of continued low back pain after his May 2007 surgery as evidence that the ALJ erred in stating that Bell reported improvement in his leg and back pain following surgery. (Dkt. No. 13 at

12

17.) However, Bell's treatment records indicate that, initially after his surgery, Bell experienced improvement in both his back and leg pain. (Tr. at 337.) Thereafter, although Bell complained of persistent low back pain, on numerous occasions he reported that his leg pain was gone. (*Id.* at 281, 313, 324, 330, 334, 392, 512, 516, 530.) Indeed, in January 2009, Bell's treating nurse practitioner noted that Bell "continues to do well postoperatively for the most part. He does have some aggravation of his back pain but without any radicular symptoms." (*Id.* at 516.) Thus, although there was evidence that his symptoms persisted, there was substantial evidence that Bell's condition improved following his surgery.

Finally, Bell testified that he walks half a block every morning, can walk fifteen to twenty minutes at a time, spends three and a half hours a day walking or standing, meets his youngest child off the school bus, and goes to the store with his wife, although he does not "do the shopping or any of the lifting." (*Id.* at 70-71, 73, 75-76.) Bell also drives a vehicle, watches television, prepares some meals, including grilling in the backyard, does some housework, including drying the dishes and vacuuming a room in his home every other day, visits his mother once a week, and visits with friends, both at his home and theirs, several times a week. (*Id.* at 64, 73-

75.) Although Bell disputes the ALJ's findings with respect to his activities of daily living, Bell's testimony provides substantial evidence for such findings. (Dkt. No. 13 at 19; Tr. at 91-92.)

### D. Step Five Determination

Lastly, Bell asserts that the step five determination is unsupported by substantial evidence. (Dkt. No. 13 at 20-21.) This argument relies on Bell's previous claims that the ALJ erred in developing the record and determining his RFC. (*Id.*) However, in light of the court's conclusion that the ALJ did not err in developing the record and determining Bell's RFC, *see supra* Part VI.A-B, he also did not err in using that RFC to determine—with the help of a vocational expert—whether jobs existed in the national economy that Bell could perform.

### E. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Bell's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

14

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 4, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court